UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTINE WHEELER,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No.  1:21-cv-01225-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 22, 23)<br><br>FOURTEEN-DAY DEADLINE |

### Findings and Recommendations

### INTRODUCTION

Plaintiff Ernestine Wheeler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court will recommend denying Plaintiff's

motion for summary judgment, denying Plaintiff's appeal, and affirming the agency's determination to deny benefits.

### FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on April 4, 2018. AR 251-55.[1] Plaintiff alleged that she became disabled on January 14, 2017, due to nerve damage on her neck, carpal tunnel, arthritis, right ankle numbness/muscle spasms/tingling, limited movement in right hand, cholesterol, and high blood pressure. AR 251, 281. Plaintiff's application was denied initially and on reconsideration. AR 172-76, 180-84. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Debra Denney issued an order denying benefits on April 6, 2020. AR 12-24, 29-65. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 6-10. This appeal followed.

**Hearing Testimony**

ALJ Denney held a hearing by video conferencing on February 20, 2020. Plaintiff appeared with her attorney, Rafi Issagholian. Pat Pauline, an impartial vocational expert, also appeared and testified. AR 31-32.

In response to questions from the ALJ, Plaintiff testified that at the time of her application she was experiencing problems with her hands getting weaker and excruciating neck and spine pain. AR 34. Plaintiff lives in a house with two roommates. She does not have a driver's license because she does not have a car. To get around, someone picks her up or she takes the bus. She has a ninth-grade education. AR 35-36, 41.

Plaintiff testified that she primarily sees Dr. Yap for pain management and takes Norco. She had surgery on her cervical spine in October 2017. She also had an ankle fracture for which she was receiving lidocaine injections. She has a plate and screws in her ankle. AR 36-38.

When asked about her abilities, Plaintiff testified that she could lift about two or three pounds. She can walk to the mailbox or across the street to the bus stop. She does not wash dishes or cook.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  She can stand about five or ten minutes.  She spends most of the day in a recliner.  She has a hard time
2  reaching with both arms.  AR 38-40.  During the day, she does "pretty much nothing," because when
3  she tries to do something, it aggravates the whole spine.  AR 40.  She takes quite a few medications,
4  which her roommate sets up.  She smokes about half of a pack of cigarettes a day.  She was right-
5  handed, but now uses her left hand because of ulnar surgery on her right hand.  She also had carpal
6  tunnel on both the left and right.  She has a cellphone, but uses the speaker.  She does not use the
7  computer and has trouble writing.  AR 40-43.

8  In response to questions from her attorney, Plaintiff testified that she could not do a job where
9  she would have to be using her hands all day long, like working on a computer or answering phones,
10 even if she could sit all day.  Plaintiff explained that sitting at the hearing was straining her because it
11 felt like her spine and neck were burning.  She does not prepare her own lunch or do her own laundry.
12 Plaintiff further testified that she does not have side effects from her medication, but later clarified that
13 the Gabapentin causes side effects, so she only takes it at night.  She has constant pain from her neck
14 and her pain medications will take her pain down to a 6.  She has had recent dizzy spells, where her
15 body starts to tingle, she sweats profusely and has to lie down.  The spells last about 10 to 15 minutes.
16 AR 43-49.

17 Plaintiff did not think she could do a job where she had to stay seated because of her neck pain.
18 Even if her hands were fine, she could not sit six hours in an eight-hour period.  AR 49-50.  Plaintiff
19 had right ulnar surgery, left thumb tendon surgery, and carpal tunnel release.  She also had right carpal
20 tunnel release in 2009.  AR 51-54.  She has sharp pain in her right ankle, and uses a cane because it
21 makes her feel more comfortable.  She could not work at a job where she had to be on her feet most of
22 the day.  She guessed that the longest she could stand would be five to ten minutes.  AR 56-60.

23 Following Plaintiff's testimony, the ALJ elicited testimony from the VE, asking hypothetical
24 questions.  For the first hypothetical, the ALJ asked the VE to consider an individual who could
25 occasionally lift 15 to 20 pounds, frequently lift 10, stand and walk four hours in an eight-hour
26 workday, sit eight hours during an eight-hour workday with normal breaks, could frequently but not
27 constantly reach in all directions, frequently but not constantly handle and finger, ramps and stairs
28 slowly with a handrail on an occasional basis, and no more than very occasional crouch, crawl, or

kneel, and no work on ladders, ropes, scaffolds, or at unprotected heights or with fast-moving machinery. AR 56, 60-61. The VE testified that if the hypothetical person could stand or walk for two hours at time and sit for two hours at time before needing to change positions, then the individual could perform jobs such as routing clerk, router, and office helper. AR 61.

For the next hypothetical, the ALJ asked the VE to consider that the person was reduced to lifting 10 pounds occasionally and 10 pounds frequently, could stand and walk for two hours in an eight-hour workday, and could either sit for six hours or eight hours during an eight-hour workday, had frequent but not constant ability to perform fine and gross manipulations as well as handling, with reaching overhead, to the sides or to the front only occasionally. The VE testified that only the position of surveillance system monitor would be available. AR 62-63. If the person could only perform occasional handling and fingering, gross manipulations, the job would remain. If the individual would need two additional breaks beyond those normally given for 30 minutes each, then that job and any other job would be precluded. AR 63

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-24. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2018, the application date. The ALJ identified the following severe impairments: residuals of a fracture on the right ankle, followed by open reduction internal fixation and screw removal; radiculopathy in cervical spine with residuals of anterior cervical discectomy; peripheral neuropathy; a history of bilateral carpal tunnel syndrome with post-surgery residuals; and obesity. AR 18. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she could lift 15 to 20 pounds

occasionally, 10 pounds frequently, could stand or walk for two hours and sit for eight hours in eight-hour workday with normally given work breaks, could frequently reach in all directions and handle or finger. She could occasionally crouch, kneel, crawl, and climb ramps and stairs slowly with a handrail. She could not work on ladders, ropes, or scaffolds or at unprotected heights or with fast-moving machinery. She also could sit two hours at a time before needing to change position. AR 19-23. With this RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform, such as routing clerk, router, and office helper. AR 23-24. The ALJ therefore concluded that Plaintiff had not been under a disability since April 2, 2018, the date her application was filed. AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[2]

Plaintiff contends that the ALJ erred by failing to provide adequate reasons for discounting the medical opinions of her treating physicians while finding persuasive the non-examining opinions of the State Agency consultants. Plaintiff also contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of her limitations and failed to offer clear and convincing reasons to reject Plaintiff's subjective complaints. (Doc. 22 at 1.)

### A. Evaluation of Medical Opinions

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 416.920c. Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *Woods*, 32 F.4th at 792.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods*, 32 F.4th at 792 (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

<u>Non-Examining Physicians</u>

Plaintiff challenges the ALJ's evaluation of the opinions of the non-examining, State Agency physicians, Dr. W. Jackson and Dr. S. Lee. (Doc. 22 at p. 12.)

Relevant here, Drs. Jackson and Lee opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk no more than 2 hours at one time and no more than 6 hours in an 8-hour workday, and could sit 2 hours at one time and 8 hours total in an 8-hour workday. She was limited to no more than frequently reaching in all directions, handling, fingering, feeling, pushing, and pulling, no more than frequently using the right lower extremity to operate foot controls, and frequently climbing ramps/stair/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling. AR 151-53, 163-65.

In evaluating these opinions, the ALJ reasoned as follows:

> The undersigned finds these opinions to be persuasive, as they are supported by the treatment records indicating that the claimant has undergone a cervical discectomy and

>fusion surgery, hand and wrist surgeries connected to her carpal tunnel syndrome, and screws and plates installed in her right ankle (B4F/3; B7F/4; B9F/1; B11F/1-2; B12F/1, 4; B13F/6.) It is also consistent with the imaging studies, which indicate that the claimant has degenerative disc disease in the cervical spine and moderate osteoarthritis in her ankle (B2F/11, 13, 14-15; B5F/1; B10F/1-2, 4).

AR 22-23.

Plaintiff argues that the ALJ's reasons for finding the State Agency opinions persuasive are not based on substantial evidence. (Doc. 22 at p. 12.) In so arguing, Plaintiff asserts that the opinions are not consistent with the *entire* record in this case because the State Agency physicians were not able to review subsequent examination findings, a cervical discectomy on October 27, 2018 and a subsequent EMG study in January 2019,[3] citing AR 561, 579-80, 584, 680-81, 759-61, 767-68, 783. (*Id.* at p. 13.) Plaintiff's argument is not persuasive for two primary reasons. First, "there is always some time lapse between a consultant's report and the ALJ's hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). The ALJ is entitled to rely on the consultant's opinions even if subsequent evidence enters the record. *See*, *e.g.*, *Keyes v. Comm'r of Soc. Sec.*, No. 1:21-cv-01779-EPG, 2023 WL 2166917, at *2 (E.D. Cal. Feb. 22, 2023).

Second, in developing Plaintiff's RFC, the ALJ considered the subsequent medical evidence in the record, including objective examination findings, Plaintiff's cervical discectomy on October 27, 2018, and the EMG study completed in January 2020. AR 20- 22, 561 [B7F/4], 579-80 [B8F/3-4], 584 [B8F/8], 680-81 [B9F/44-45],759-61 [B11F/1-3 - discectomy], 767-68 [B12F/1-2], 783 [B13F/6 - EMG]. Indeed, the ALJ expressly cited many of these same records in finding the opinions of Drs. Jackson and Lee persuasive, including subsequent objective examination findings, Plaintiff's cervical discectomy in October 2018, and the EMG study in January 2020. AR 22-23 (citing B7F/4, B11F/1-2, B12F/1, B13F/6).

---

[3] According to the record, the EMG study cited by Plaintiff was completed on January 8, 2020, not in January 2019. AR 783.

8

For these reasons, the Court finds that the ALJ did not commit reversible error in the evaluation of the opinions of the non-examining, State Agency physicians, Dr. W. Jackson and Dr. S. Lee.

Treating Physician

Plaintiff next challenges the ALJ's evaluation of the opinion of her treating physician, Dr. Chi Nguyen.  (Doc. 22 at pp. 13-15.)

On January 18, 2017, Dr. Nguyen opined that Plaintiff was disabled for six months from the date of evaluation due to bilateral carpal tunnel syndrome.[4]  Dr. Nguyen noted that Plaintiff underwent right CT release in 2009 and left wrist CT release in 2013 and in 2014.  AR 406.  On March 2, 2018, Dr. Nguyen opined that Plaintiff was unable to work due to right hand pain.[5]  AR 496-97.

The ALJ found these opinions to be "less persuasive because they are not supported by the treatment records, which reflect that claimant's last hand surgery was in 2016."  AR 23.  The ALJ also determined that Dr. Nguyen's opinion was "not consistent with the results of the physical examinations, in which the claimant's sensation was intact and her cerebellar function finger-nose maneuver and alternating rapid movement of upper extremities were within normal limits (B4F/120; B13F/6)."  AR 23.

In evaluating the persuasiveness of Dr. Nguyen's opinion, the ALJ found it unsupported by the treatment records.  This reasoning invokes the supportability factor.  20 C.F.R. § 416.920c(c)(1).  In this instance, Dr. Nguyen's treatment notes identified Plaintiff's reports of numbness, tingling, and pain in her hands, but were otherwise normal with only limited, sporadic objective findings of tenderness and weakness in the wrists and hands.  AR 405-06, 410-11, 418-19, 431 (tenderness of left wrist), 436-37, 444, 450 (weakness on both wrists, lots of numbness, tingling), 466-67, 472, 486, 496, 507-09, 513-15, 519, 542, 548-49, 639-42, 651-52, 662-63, 680 (tenderness of both hands and wrists),

---

[4] Dr. Nguyen also determined Plaintiff was disabled for 6 months from August 15, 2017, due to carpal tunnel syndrome.  AR 431.
[5] Plaintiff notes that Dr. Nguyen opined Plaintiff was disabled for 6 months due to cervical radiculopathy status-post three injections.  (Doc. 22 at p. 14.)  The post-injection recovery period does not meet the durational requirements for disability.  *See* 42 U.S.C. § 1382c(a)(3)(A).

1  686-87.  Plaintiff does not cite or refer to any objective findings in Dr. Nguyen's contemporaneous
2  treatment records supporting the opinion that Plaintiff was unable to work due to hand pain or her
3  carpal tunnel syndrome.  The ALJ also indicated that Plaintiff's last hand surgery was in 2016,
4  suggesting no further surgery recommendations to address her hand pain or carpal tunnel syndrome.

5        The ALJ also reasoned that Dr. Nguyen's opinion was not consistent with the results of
6  physical examinations in the record, which showed intact sensation and rapid movement of the upper
7  extremities within normal limits.  AR 23.  This reasoning properly invokes the consistency factor.  20
8  C.F.R. § 416.920c(c)(2).  The ALJ cited to a neurological consultation in March 2017, which revealed
9  that Plaintiff had no motor deficit in her upper or lower extremities, her deep tendon reflexes were 2+
10 throughout, and her sensory examination was intact.  AR 23, 523-24.  The ALJ also pointed to a nerve
11 conduction study completed in January 2020, which demonstrated sensation intact to light touch
12 bilaterally in the upper extremities and evidence of bilateral median neuropathy localized at the wrist
13 consistent with carpal tunnel syndrome with sensory fibers affected only.  There was no
14 electrodiagnostic evidence of bilateral cervical radiculopathy.  AR 23, 783.  In addition, the record
15 evidence indicated that in March 2018, Plaintiff could touch her fingers and her range of motion was
16 restricted only above shoulder reach.  AR 382.  In April 2018, bilateral median and ulnar motor studies
17 were normal and bilateral median, ulnar and radial sensory studies were normal.  AR 387.  In
18 November 2018, Plaintiff's upper extremity neurological examination showed hand intrinsics of 5/5
19 on the right and left, wrist extension of 5/5 on the right and left, and wrist pronation of 5/5 on the right
20 and left.  AR 584.  In February 2019, Plaintiff's grip bilaterally was +4/5, and her above shoulder
21 reach was present.  AR 768.  Further, in April 2019, Plaintiff's motor examination revealed normal
22 tone and bulk, and full strength.  Her sensation was normal, with only some weakness in the intrinsic
23 hand muscles on the right side related to previous peripheral nerve surgery.  AR 767.

24       Based on the foregoing, the Court finds that the ALJ appropriately considered the factors of
25 supportability and consistency in evaluating Dr. Nguyen's opinion and the ALJ's determination is
26 supported by substantial evidence.  To the extent Plaintiff suggests an alternative interpretation of the
27 evidence, this is not sufficient to establish reversible error.  If the evidence "is susceptible to more than
28

one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to offer any clear or convincing reasons to reject her subjective complaints. (Doc. 22 at p. 16.) The Court disagrees.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 20. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's allegations were not entirely consistent with the medical evidence. AR 20, 22. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. For instance, the ALJ considered Plaintiff's complaints regarding her neck and cervical spine, but noted that Plaintiff underwent a discectomy and fusion in her cervical spine in October 2018, and by February 2019, reported that her neck pain had completely resolved. AR 22, 767, 768 ("Neck pain has completely resolved."), 770 (October 2018 surgery date for cervical diskectomy and fusion). With regard to complaints about tingling and numbness in her hands, the ALJ considered that during several physical examinations, Plaintiff had full range of motion in her upper extremities and intact sensation. AR 22, 363, 385, 523, 783. With regard to complaints about her ankles, the ALJ noted that during physical examinations, Plaintiff's gait was normal, and she had normal reflexes and strength in

11

her ankles. AR 22, 566-67 (normal reflexes and sensation, 5/5 ankle strength); 604 (normal gait, no assistive device use for ambulation), 608 (same), 617 (same), 767 (normal sensation, full motor strength, steady gait; "No walking disability"), 781 (normal gait, no assistive device use for ambulation), 790 (same).

Second, the ALJ also considered Plaintiff's relatively conservative course of treatment for her ankle and complaints of pain. AR 22. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). Here, the ALJ noted that Plaintiff treated her ankle pain conservatively with injections and primarily treated her pain with medications, including narcotics for which her "providers cautioned . . . in regards to her reliance on pain medication." AR 22, 672 (ankle injections), 622 (cautioning claimant on taking pain medication only as needed).

Third, the ALJ found that Plaintiff continued to smoke cigarettes despite being counseled by medical professionals to stop. AR 22. An ALJ may properly consider the failure to comply with advice to stop smoking when evaluating a claimant's subjective complaints. *See McKenzie v. Kijakazi*, 2021 WL 4279015, at *10 (E.D. Cal. Sept. 21, 2021) (collecting district court cases in Ninth Circuit determining that smoking against medical advice undermines a claimant's subjective complaints). Here, the ALJ noted that Plaintiff had been counseled to stop smoking. AR 782 ("Patient counselled on the dangers of tobacco use and urged to quit.") Despite this advice, Plaintiff testified that she continued to smoke half a pack of cigarettes a day and had dropped cigarettes and burned holes in the carpet. AR 22, 42.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. However, even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an

ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment and her appeal from the administrative decision of the Commissioner of Social Security be denied and the agency's determination to deny benefits be affirmed; and

2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Ernestine Wheeler.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 14, 2023**              /s/ *Barbara A. McAuliffe*
                                                           UNITED STATES MAGISTRATE JUDGE